UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH CAMPBELL, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) CAUSE NO. 3:21-CV-943 RLM-MGG |
| | ) |
| WILLIAM HYATTE and | ) |
| GEORGE PAYNE, JR., | ) |
| | ) |
| *Defendants* | ) |

OPINION AND ORDER

Joseph Campbell has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Campbell sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Campbell has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Campbell requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 13], GRANTS Mr. Campbell's

motion for summary judgment, [Doc. 26], and DENIES AS MOOT Mr. Campbell's request for oral argument. [Doc. 39].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Campbell's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 6], and he requests consolidated oral argument. [Doc. 39]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Joseph Campbell alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for six weeks in early 2021. While on suicide watch, Mr. Campbell was placed in restrictive housing. His cell had no light, and its window was covered with sheet metal. The cell's toilet didn't work for two weeks, so excrement and urine accumulated. Mr. Campbell didn't have drinking water in the cell. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Campbell sued from prison, so the defendants aren't liable if they can show that Mr. Campbell didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if

there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Campbell used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Campbell filed a grievance but didn't exhaust the appeals process. Their evidence includes the

Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 13-2], Mr. Campbell's grievance history, [Doc. 13-3], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility. [Doc. 13-1]. They include with their response in opposition to Mr. Campbell's motion for summary judgment the complaint and grievance documents from a plaintiff who fully exhausted administrative remedies in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160. [Doc. 31-1 and 31-2].

Mr. Gapski handles grievances and appeals as an offender grievance specialist at Miami Correctional Facility. He reviewed Mr. Campbell's grievance records. He attests to the steps prescribed by the grievance policy and attests that that's the only official policy. He also attests to Mr. Campbell's grievance history, explaining that Mr. Campbell has filed several grievances during his incarceration. Only one grievance is recorded for Mr. Campbell's period in restrictive housing and the month that followed, and the grievance doesn't involve his cell conditions. The defendants' copy of Mr. Campbell's grievance log matches Mr. Gapski's testimony.

*Mr. Campbell's Account*

Mr. Campbell asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 24-7 at 10–13], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the

6

prison, [Doc. 24-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 24-2 to 24-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 24-6].

According to Mr. Campbell, he was kept in A-Unit restrictive housing for six weeks starting in early January 2021. He filed at least three grievances about his cell conditions by giving them to the unit counselor. He received no response or notice of receipt. He knows from his time in other state prisons that other state prisons provide notice of receipt as soon as a grievance is accepted.

After he received no response, Mr. Campbell requested an interview with Mr. Grove, a counselor, to see what happened to his grievance. He received no response.

Mr. Campbell then complained to the Ombudsman but heard nothing in response.

Finally, he complained to his mental health professionals.

Mr. Campbell didn't know he could appeal a non-response but says even if he knew he could, he wouldn't be able to because appeals require the grievance number and a copy of the grievance response and he had neither.

Mr. Campbell presents Mr. Gapski's testimony as evidence that the grievance process was unavailable. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing,

7

like Mr. Campbell's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

He also discusses appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 13-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, detailing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives

8

the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 24-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Campbell also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## Discussion

Mr. Campbell and the defendants move for summary judgment on the exhaustion defense. The governing law is set out thoroughly in the court's order on cross-motions for summary judgment in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, and the court adopts by reference discussion of the governing law.

9

Warden Hyatte and Deputy Warden Payne move for summary judgment, arguing that their records don't show any grievance or appeals, so Mr. Campbell must not have exhausted administrative grievances. Mr. Campbell disagrees, arguing that he's entitled to judgment on the exhaustion defense because the prison's lack of response made administrative remedies unavailable.

Approaching from Mr. Campbell's perspective makes for a clearer picture.

Mr. Campbell points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. He says in his declaration that he never received a response to any grievance. This would show that administrative remedies weren't available because prison officials can't "exploit the exhaustion requirement through indefinite delay in responding to grievances." Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (citation and quotation omitted).

The grievance policy requires that prisoners appeal non-responses, and a prisoner must follow any prison rules that require administrative appeals Id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)). Mr. Campbell didn't file any appeal, so he appears not to have fully exhausted administrative remedies. He argues, however, that Miami Correctional Facility's policy and practice made appealing a non-response impossible.

According to policy, a grievance specialist is to send the prisoner an "unacceptable form" rejecting a grievance or a notice of receipt of an accepted grievance within ten business days of receipt. If the prisoner doesn't receive either within ten business days of submitting it, the prisoner is to notify the

10

grievance specialist of the non-response and retain a copy of the prisoner's own notice to the grievance specialist. The grievance specialist is to respond to that notice within ten business days. The policy then also requires that a grievance specialist respond to a grievance within fifteen business days of receipt. If a prisoner doesn't receive a response within twenty business days of when the grievance specialists receive a grievance, a prisoner is to appeal as if a response came. The warden is to respond to an appeal within ten business days of receiving the appeal. If he doesn't respond by then, a prisoner can appeal as if a response had come. Under these rules, Mr. Campbell exhaust administrative remedies only if he appeals the lack of a response to a grievance as well as appeals the response to the appeal (or non-response).

      This appeals process makes little sense. The part of the policy requiring that a prisoner file a notice of non-response says that the prisoner must do so if ten business days have passed since submitting a grievance. It doesn't give a deadline by which the prisoner must notify the grievance specialist, suggesting that the step isn't mandatory. Nor does the policy define when a grievance is "submitted." Most deadlines in the grievance policy are based on when a prison official receives a grievance or appeal. It's unclear if a grievance is submitted when the grievance is received, which the prisoner would have no way of knowing, or when the prisoner signed the grievance, hands it to a prison official, or puts it in an outbox, which the policy doesn't address. The policy doesn't say how to provide this notice and the prison don't have a form for this purpose; Mr.

11

Gapski testified that there's not a standard form and prisoners can "write on anything." [Doc. 24-1 at 33].

This step's necessity is further obscured by its relation to the first-level appeal. First, the policy at one point says a prisoner "shall" notify the grievance specialist of a non-response, [Doc. 13-2 at 9], while saying at another point that the only recognized process includes: (1) a formal attempt to resolve concerns; (2) a written appeal to the warden; and (3) a written appeal to the department grievance manager. [Doc. 13-2 at 3]. Second, the policy says a prisoner can appeal a non-response as if there'd been a response if twenty business days have passed from the grievance specialist's receipt of the grievance. The policy doesn't say that the prisoner can appeal only once he's filed a notice of non-response or once a grievance specialist has responded to a notice of non-response. This part of the policy is opaque and incapable of use for non-responses.

Appealing non-responses is likewise confusing. The prisoner can notify the grievance specialist of a non-response after ten days of submitting it, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how

12

a prisoner is to get a copy of State Form 45473, much less how a prisoner in restrictive housing, like Mr. Campbell was, is to get ahold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

If Mr. Campbell is believed, then he exhausted available remedies. He asserts that he received no response to his grievances. The policy demanded that he appeal those non-responses, yet defendants and the policy don't explain how a prisoner who receives no response can mark "disagree" on a form that is never received and that might not even exist. The policy puts a prisoner who receives no response in the impossible situation of needing to appeal the non-response by including the response that was never received. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011).[2] This policy gap means "there is no adequate appeals

---

[2] The defendants try to distinguish Knighten v. Mitcheff by saying that Mr. Knighten had copies of his grievances in addition to his testimony while Mr. Jackson has only his word. Their argument depends on the faulty premise that a "self-serving" affidavit doesn't create a genuine issue of fact, discussed in the next paragraph.

process," so Mr. Campbell "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).

The defendants argue that Mr. Campbell's evidence doesn't create a genuine issue about whether he filed any grievance. They characterize his declaration as self-serving, but a declaration's self-serving nature isn't reason to disregard it at summary judgment. Hill v. Tangherlini, 724 F.3d 965, 967–968 (7th Cir. 2013) ("[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). The defendants insist that Mr. Campbell should have submitted his grievances as documentary evidence, but they don't suggest how that would be possible given his claim that he sent grievances that never got responses. *See* Reid v. Marzano, No. 9:15-CV-761, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017) ("It is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers."). They also argue that Mr. Campbell should have said when he submitted the grievances and how they were submitted. He said he gave them to unit counselors and he said he submitted them while in restrictive housing for six weeks. His declaration is specific enough to support finding that he submitted grievances.

Warden Hyatte and Deputy Warden Payne then argue that the Ombudsman's testimony as irrelevant because the Ombudsman doesn't work for the prison, have authority over grievances, or have input into grievances. Evidence is relevant if it tends to make a fact of consequence more or less likely

14

than it would be absent the evidence. Fed. R. Evid. 401. Evidence from the Ombudsman would tend to show that Miami Correctional Facility didn't ensure that every grievance got from the prisoner sending it to the grievance office. Any objection to the Ombudsman's testimony is overruled.

The defendants also object to any hearsay in Mr. Campbell's statement of material facts. These objections aren't developed in the defendants' brief and would require the court to develop the arguments to rule on them. Failure to articulate a hearsay objection amounts to waiver, so any hearsay objection is overruled. McCormick v. Goebel, No. 3:19-CV-608, 2023 U.S. Dist. LEXIS 21093, at *14 (N.D. Ind. Feb. 7, 2023) ("Failure to articulate why a statement is hearsay is sufficient to waive the objection.").

Warden Hyatte and Deputy Warden Payne turn to reasons Mr. Campbell didn't exhaust administrative grievances even if he submitted a grievance. First, they assert that Mr. Campbell didn't exhaust administrative remedies because he didn't inform the grievance specialists of any non-response. That portion of the policy is opaque and doesn't appear to be mandatory, as more fully explained before, so Mr. Campbell didn't fail to exhaust administrative remedies by missing that step.[3]

The defendants next claim Mr. Campbell didn't exhaust administrative remedies because he can't claim he didn't know how the process worked. The

---

[3] Defendants in another case in this district successfully argued that the plaintiff didn't exhaust administrative remedies because he didn't complete this step. Eslick v. Davis, No. 3:21-CV-866, 2022 U.S. Dist. LEXIS 211460, at *3–5 (N.D. Ind. Nov. 21, 2022). The parties in that case appear not to have raised any argument why this step might not be mandatory or might be too opaque.

prison includes information about grievances during orientation and admission and Mr. Campbell filed other grievances, so the defendants say Mr. Campbell can't claim he was ignorant of the policy. Relatedly, they argue that Mr. Blanchard, a plaintiff in a consolidated case, successfully exhausted each step of the policy, so Mr. Campbell must have also been able to.

These arguments miss the mark. Mr. Campbell doesn't argue that his ignorance of the policy kept him from accessing administrative remedies; he argues that the policy didn't account for appealing non-responses, so it was impossible to appeal a non-response. Whether he knew how the policy worked doesn't change that he couldn't appeal a non-response. Nor does Mr. Blanchard's experience; his grievances received responses, so unlike Mr. Campbell, appeals were available to Mr. Blanchard.

In summary, the defendants haven't created a genuine dispute of material fact as to whether administrative remedies were available to Mr. Campbell. The remedies they say Mr. Campbell didn't exhaust weren't available to him because of policy and practice. Their argument to the contrary rests on the faulty premise that a grievance doesn't get logged only if a prisoner doesn't file it. But Mr. Gapski's testimony shows that a grievance could go missing or get lost for any number of reasons and a grievance specialist wouldn't know. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance

16

> specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' evidence is consistent with Mr. Campbell's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Campbell. Administrative remedies weren't available to Mr. Campbell, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Campbell's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Campbell's motion for summary judgment without a Pavey hearing.

Mr. Campbell requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

## CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Campbell's motion for summary judgment; REJECTS

the exhaustion defense; and DENIES AS MOOT. Mr. Campbell's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.<br>Judge, United States District Court